Let's just wait for the folks to shuffle out of the room. Okay, Mr. Robati. May it please the court, my name is Michael Robati and I represent the appellant Michael Barreto. For two reasons, this court should vacate Mr. Barreto's sentence and remand for the required competency hearing with the option for Mr. Barreto to withdraw his guilty plea if he is later found competent. First, the district court abused its discretion by failing to hold the required competency hearing under section 4241A and the due process clause. And second, the district court committed plain error when it failed to ensure that Mr. Barreto truly understood that the maximum term of supervised release that he faced was life while entering his guilty plea. Separately, we've also challenged the restitution order in this case. The government failed below to put forth any evidence regarding victim losses and the district court nonetheless entered the restitution order without that evidence. And that itself was plain error and warrants vacating the sentence in that regard and remanding with instructions to order. So I guess we'll just take those in order. I mean, so in terms of the requirement to hold the hearing, the statute says that the district court does that if there's reasonable cause for it, right? That's correct, Your Honor. But in this case, both parties came to the district court and said we would like an evaluation and they even agreed on an evaluator. And then the district court gets a report from the evaluator that says that he's competent. The report addresses the limitations of the early reports and explains why he's competent. And then after that, no party asks for a hearing. The defense counsel says that their client understands the nature of the plea, understands the sentence and so on. Why would the district court have any reason to believe that there was a need for a hearing if the parties seemed to be satisfied with the competency determination they had requested? Yes, Your Honor. It's because the April 2021 letter that the parties submit, which is the first page of our confidential appendix, in that letter, the parties acknowledge that the reasonable cause standard had been met here. They specifically say there is a reasonable cause and then they cite the- They say reasonable cause for an examination. It doesn't say for a hearing, right? That's correct, Your Honor. But is there a difference? There is no difference. So what they're asking for, sure, is for an examination, but the standard they cite is reasonable cause- That's fine. So what that means is we think there's reasonable cause for a hearing. Let's start with an examination. Then they get the results of the examination and they are satisfied with it. So at that point, why would the district court think that there's still reasonable cause for a hearing if everybody seems to think that the examination that they requested resolved the issue? Because under the law, if reasonable cause is established at any point during the course of the proceeding, the statutory threshold is met and the command is clear under the   Once it's established, was it ever established that there was reasonable cause for a hearing? It was established that there was a reasonable cause to believe that he had a mental defect. Whether or not that- Was sufficient to render him incompetent. Exactly. The district court never made a finding, right, that there is reasonable cause for a hearing. The district court never made that specific finding, but the parties agreed to it in their You keep saying they agreed to it. They agreed that there was reasonable cause for an examination. You don't think there's a difference? I don't, Your Honor, because the standard the parties cite- The district court, because I often put myself into the position of the district judge, the evaluation says he's competent, the lawyers aren't raising the issue. At the plea agreement, at the plea allocution, both sets of lawyers are saying he's competent. She clearly has in her mind that this is an issue because she does a really, really thorough hearing. The allocution is really thorough and she's satisfied. She doesn't order a hearing. Why isn't that a fair, a pretty likely inference that in her mind there wasn't reasonable cause for a hearing? Your Honor, because it's not enough for the court to hold a very thorough plea proceeding, right? Under the law, there are very specific due process requirements that- But the requirement isn't triggered until she finds reasonable cause for a hearing. But there's- And isn't it apparent that, I mean, she was mindful of the issue, right? That's why she conducted such a thorough allocution, but isn't it clear that in her mind there wasn't reasonable cause for a hearing and under the circumstances would that be an abuse of discretion? It's not clear from the record that she overruled the party's finding, the party's agreement that there was reasonable cause. She never makes a finding that there is not reasonable cause. She never asked the parties to even submit the 2017 reports from the state that indicated that he was incompetent. Those are even in the record. And at a bare minimum, the court has not- The evaluation that she got at the request of the parties explained why those earlier reports were not dispositive of the question, right? It explained, like, here's how the early reports did the evaluation. I have done a complete adaptive functioning evaluation and my conclusions are better than those conclusions. It explains that, right? It does explain that, but those reports are never- So if nobody is telling her that actually the later evaluation is weaker than the earlier evaluations, why should she sua sponte question the competency determination that the parties requested? Your Honor, it's because the law ultimately puts the obligation on the district court So let's say, in fact, it wasn't just that defense counsel failed to say, we're not satisfied with the evaluation. We want a hearing. Let's say they actually affirmatively said, we are satisfied with the evaluation. We don't think a hearing is necessary. Would the district court still have been obliged to hold a hearing? Your Honor, I think this is the question that was left open in the footnote one of Houston, where the court says that there was an earlier finding of reasonable cause, where the reasonable cause finding earlier in the case, and later there was a report that undermined that. But nonetheless, the question was whether or not once the reasonable cause threshold at any point during the proceeding is established, there is an obligation to hold a hearing. So you're saying even if defense counsel thought that their client was competent to take a plea and was not going to say that he was incompetent, the district court, because of earlier reports that suggested he was incompetent, was supposed to have a hearing? That's correct. And so then both parties at the hearing would be arguing that he's competent. This court- So what should happen? The district court is supposed to sua sponte, say, no, defense counsel, you are wrong. Your client is incompetent. If there is reasonable cause for the district court to believe that the defendant is incompetent, even if the parties say otherwise, is the ultimate obligation under the law- But normally a hearing is adversarial, right? Like the parties put on witnesses and so on. So if, in fact, both parties were satisfied with the competency evaluation, the Paredes report, then the hearing would have consisted of Paredes taking the stand and saying, I think he's competent, here's my report, and both parties agreeing that that established his competency. Or the court asking questions. The point of the case law and the point of the law here, 4241, is that this is such a fundamental right, such a fundamental right. I was reading the Arenberg case this morning, which is one where we said the district court should have ordered a hearing, but there the defendant was pro se. The government raised concerns about his competency. During the defendant's summation, his pro se summation, he was referring to microwaves and radio waves and a conspiracy. And there, you can see why we were concerned that the district court should have raised sua sponte, an issue about the competency. We don't have anything like that in this case. I think there are two points that we're making here. One is that the April 2021 letter triggered the reasonable cause standard, but second, the conflict between the expert reports, where you have a majority of the reports finding him incompetent over the years. How many years had gone by? A few years had gone by. I think this was perhaps four years, but I'm not sure why that matters when the root cause of the incompetency is a traumatic brain injury and there's a long-term documented history. So four years had gone by and the report that the parties requested evaluates those early reports and explains the weaknesses of those conclusions, right? That's correct, but the district court never evaluates those reports, never puts them in the record. And there were deficiencies on the face of the Paradis report. The report itself said that it was not able to conduct a complete IQ test because of the limitations of COVID. The doctor was not able to interview the defendant personally. There was also a conflict between the key adaptive functions.  So the parties requested the report. The report concludes that he's competent. After that, defense counsel does not request a hearing. Defense counsel explains to the district court that their client understands the nature of the plea, right? The district court itself has a colloquy with the defendant directly to confirm that he understands the proceedings, right? That's correct. And then there's a sentencing, again, where the defense counsel represents that the defendant understands and the district court has another direct colloquy with the defendant, right? That's correct. So under all... And in fact, the district court also does make a finding, or I mean, it's not a finding, but makes a statement that says, given the nature of his conduct, I also don't really see how he could be so impaired as to understand the nature of the proceedings because he intentionally, you know, engaged in deception because he understood the legalities of his conduct and so on. So the district court is evaluating its personal interactions with the defendant, the nature of the conduct in which he engaged and whether that's consistent with the finding of incompetency and the representations of the defense counsel that he is in fact competent and understands the nature of the proceedings. And you're saying it's an abuse of discretion, the district court should have said, I don't believe my own eyes, I don't believe the defendant's lawyer, I'm going to decide that we need to have a hearing as to whether the defendant is competent. Yes, for two reasons. First, this court has said that whether defense counsel raises the issue of competency is of no moment. It is the obligation of the district court. Second, the procedural protections... But I didn't say it's just whether they raise the issue, I'm talking about actually the district court has interactions with the defendant. And the defense counsel is not simply saying, I don't request a hearing, the defense counsel is saying, I can confirm that I've talked about these issues with him and he understands them. It's not enough under the law, Your Honor. There's a very specific suite of procedural protections that are required because this is such an important right that someone who is incompetent should not be prosecuted by the government. And that involves a hearing where he has the right to testify, to call witnesses, to cross-examine the doctors. None of that happened here. And so it's not enough for the district court to just rely on its own observations, to rely on its own questions. Okay, I'm curious as to why you seem to be conceding that the defense at no point, at no relevant point, suggested that he is incompetent. I'm not conceding that. The sentencing memorandum included a testimony, a report from a clinical social worker. That's correct, Your Honor. And a report on Mercer, which seems to indicate the person is completely incompetent. And the Paradis report said that he might be able to navigate the trial with accommodations. Were there any accommodations given? To my knowledge, there were no accommodations given. And I do agree that at multiple times in the April court... I'm sorry, but the letter says the accommodations are extra time to consult with the attorneys. And the district court is pretty attentive about making sure that he has time to consult with his attorneys. And as Judge Chin pointed out, has a very extensive and thorough plea proceeding. He does have an extensive plea proceeding. And I think that the issue of competency is raised repeatedly by the defense counsel throughout. And in fact, I think that leading up to sentencing, defense counsel makes a point to say that his competency has gotten worse due to the conditions at MDC that he's been under that have put extreme strain on him. And to Your Honor's point, the Mercer report raises significant questions about whether or not the Paradis report got it right with respect to his adaptability. Because he may have been selling his competency to Dr. Paradis. Well, I think given the concern was that during these conversations, he was trying to overstate his competency, that he had higher level of adaptive functioning. Which certainly does not bespeak intelligence. I'm sorry, Your Honor? It does not bespeak intelligence if he's trying to convince the psychiatrist of the shrink that he's competent. That is correct, Your Honor. And I think what his mother had said, on which the Mercer report-  If he can convince the shrink that he's competent, it does not show that he has intelligence? One way that people try to convince people that they have high IQ, unless they're sentenced to death, then they usually try to convince people that they have low IQ. Here, the social worker says he was trying to convince the Dr. Paradis that he was competent, which you would think is the opposite of what he would seek to do if he had any brains. And I would agree with that, Your Honor. And I'd also point out that the opposite- I'm sorry. Do you think that we should say that a report is not reliable because the defendant didn't try to defraud the evaluator as to the defendant's competence? That's not what I'm saying at all, Your Honor. What I'm saying is that the Mercer report, the later report, points to a specific conflict between the Paradis report's conclusions of adaptive functioning, which are based on the defendant's own statements, and his mother's observations which contradicted that, which are reflected in an earlier report, the Why report that we submitted, and the later Mercer report. And I also do want to point out, and I know I'm over time, I do want to point out, Your Honor, that this is a continuing obligation. So even if you assume that he was competent at his plea, the question is still whether he's competent at his sentencing or at his- So at his sentencing, what had happened that would have told the district court that circumstances had changed since it got the report? Well, the defendant's sentencing submission and the Mercer report- Well, the sentencing submission talks about all of these limited functioning in terms of an argument for leniency, right? It does, Your Honor. But it also raises- You shouldn't say you should not sentence him at all because he no longer understands the nature of the proceeding. But then we go back to the fundamental question is whose ultimate responsibility is this, which is the district court-  Can I ask about the supervised release thing? Sure. So you said that there's no plain error when a defendant learns of a Rule 11 violation before sentencing but doesn't try to withdraw his plea based on that violation, right? So here it's true. The district court does say, because it says this in the plea agreement, that the maximum term of supervised release is five years. But then the defendant obviously ends up knowing that the maximum- the minimum is five years and the maximum is life because the sentencing submission says he's subject to- well, first of all, the PSR says that and then the sentencing submission says he's subject to a lifetime term of supervised release. In fact, it makes an argument that says you should have- he should have less imprisonment and more supervised release because that would be more rehabilitative, right? Well, those are all statements- So he not only knows about it and fails to try to withdraw the plea but, in fact, urges the district court to impose a longer term of supervised release. Well, those are all statements made by counsel, right? And the question is whether or not the defendant truly understood that his life- that he faced a lifetime of supervised release. I mean, do you have an argument that there's ineffective assistance of counsel? Well, Your Honor, that would involve facts that are not in the record here, so- Right. So maybe there'll be a 2255 petition that says he got ineffective assistance of counsel. But for the time being, we would attribute what counsel says to the defendant, right? Well, I don't think that's accurate on this record given all the competency issues that we've raised here and the fact that there was no hearing. The obligation under Rule 11 is for the district court to ensure that the defendant truly understands, truly understands that he faces a lifetime of supervised release. There's nothing in the record, no back and forth with the defendant on this issue. Okay. I think I understand that argument. And then can I ask about the restitution? Yes, Your Honor. So I have two questions about that. So it's true that the way it seems to work is there's a determination of the victim's  And then if there's any losses, there's a restitution obligation of no less than $3,000. But then there's, you can move, the defendant can move for termination of payment once the defendant receives, or so once the victim receives an aggregate recovery that meets the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that resulted in a final restitution order. So just as a procedural matter, I mean, could your client move for termination now on the ground that actually there wasn't a finding of losses? Your Honor, I actually haven't considered that precise procedural argument, but I think the question here is more, you know, fundamental about the district court's power to order restitution. Right. So what it seems like is actually the parties kind of stipulated to amount of losses of $3,000, right? Well, I don't think they stipulated to it. I think everybody, the district court and both sides were under, operating under a misunderstanding of the law. And they all made the same assessment. Well, I don't know. The district court says to the government at the sentencing, is it your position today that I can set a restitution figure today, or would you, in the defense, be asking for the 90 days under those relevant statutes to calculate a restitution figure? I mean, that refers to the part of the statute that says the government, if it can't calculate the losses at the time of sentencing, gets a 90-day period to find out the losses, right? And then the government says, no, we can do it today, right? Which means they think that they know what the losses are. They say you should impose $3,000. We don't think that there was losses suffered above that amount. And then the defense agrees to that, in fact, urges that award as an argument for why there shouldn't be additional monetary penalties under the ABAA fund, right? Yes, but everybody, the district court including, is operating under the assumption that there's a mandatory $3,000 per victim restitution amount. And that's just not the law. The law has certain preconditions that have to be met, including the government's statutes and the law's constitution. Well, I mean, I guess two things. I mean, one is, I'm not so sure that the district court is operating under that assumption, because it actually asks the government, like, do you need time to calculate the harm? And the district court says, no, we're ready. So I don't, sorry, the government says, no, we're ready. So I don't know, actually, if the district court is under that misapprehension. Well, but then it is true that the way the statute works is if there's any losses, there's a mandatory restitution order of $3,000, right? Right. Well, specific types of losses. Right. Any losses that qualify under the statute. Correct. Would it not be reasonable inference to think that a victim of a child pornography offense would suffer at least $3,000 worth of losses? Well, I don't think that's the standard of reasonable inference. I think the standard is the government has the burden of proof to establish those losses. No, I understand. But if the parties come before the district court and say, we agree that you should just set it at $3,000, why wouldn't the district court say, all right, it's reasonable that they've determined there's at least $3,000 worth of losses? The defense is agreeing to that because they're worried that, you know, a figure might be higher if they did an evaluation. And the government is saying, we're not seeking anything above that. Why can't the district court just take that figure and say that's the amount? Because the district court doesn't have that power. There's no inherent power to order restitution. The district court has the power conferred by statute. The statute did not authorize restitution in the absence of those preconditions. So you're saying the parties can't agree? What's the maximum amount authorized by statute? I'm not sure of the maximum amount, Your Honor. We've only focused on the minimum amount. So you're saying $9,000 is in excess of the maximum amount authorized by statute? Well, the statute will only authorize... No, you're saying there's no authorization to order anything unless there's a finding of losses. That's correct. But if the parties... So let's say the parties didn't just say you should order the minimum amount of $3,000. Let's say the parties came in and they said, we agree that each victim here suffered $3,000 of losses under the statute. Therefore, you should enter an award of a restitution order of $9,000. Is the district court supposed to say, well, I don't believe you. I'm going to, you know, have an evidentiary hearing as to the amount of losses. Why can't the parties agree on the predicate? I think the parties could agree that... Okay, so your argument is not that it's a lack of a finding. Your argument is the parties seem to misunderstand the nature of the statute. But if, in fact, they had said, we agree there were $3,000 of losses per victim, then this restitution order would be fine. But that is a factual finding that the victims incurred those losses. There is no factual finding. But why shouldn't the district court have understood the representations being made at the sentencing hearing to mean precisely that? When the district court says, do you need time to calculate the restitution amount? And the government says, no, we think you should do $3,000. And the defense counsel says, yes, we agree you should do $3,000. Because there are statements in the record that indicate that district court believed it was obligated under the law to order a $3,000 minimum. There was not a statement in the record that said that the district court believed the victims had $3,000 worth of losses. And that's the key difference here. I think the parties could stipulate that the victims did that. OK. So you're saying it's the difference between the parties stipulating that there were $3,000 of losses as versus the parties thinking that regardless of the losses, there was a minimum of $3,000. Correct, Your Honor. And you're saying because we should make the second inference, that's why the restitution order is invalid. Correct, Your Honor. And the reason why the first inference is not plausible is why? Because they didn't say the words, we think there's $3,000 worth of harm. Well, it's because they said the words that we think, something to the effect that we think we're obligated to order. I think I'm obligated to order the $3,000 worth of harm. I mean, if there were $5 worth of harm, meaning there's any harm or any losses, then there is an obligation to order $3,000 per victim, right? $5. Because if there's any harm, if there's any loss, you award restitution in an amount that's not less than $3,000, right? If there is $5 of the harm specified under the statute. Yes, that qualifies. Then there would be a $3,000. Yes, it does go to the minimum. So, I mean, if the parties come before the district court and say, there's at least some harm, and we agree, and so therefore you should go with the minimum, you're saying that's an abuse of the district court's discretion? I'm saying that's not what happened here. Okay. You're just saying that there's no way to read the record to reflect that. That's correct. And so your position would be that the victims did not suffer any harm from the child pornography? My position is that the government failed to meet its burden that the victims suffered any harm. I have no basis to say one way or the other because it's not in the record. Well, if I think that if there was any harm, let's say I thought the question is, well, if there's any harm, the $3,000 is appropriate. So let's say I'm evaluating the question for harmlessness. Could you show, like, do you think that if, in fact, they had done the right thing and looked for evidence of harm, they would have decided that there was no harm? I have no idea, Your Honor, because there's specific types of harm such as lost wages, mental health bills, medical bills, those things. I have no idea whether these victims suffered any of those types of harms because it is not in the record. And in the absence of a record that supports this, the court does not have the power to order restitution. Okay. Thank you, Mr. Rabbani, for your reserved time for rebuttal. But let's hear from the government, Mr. Harper. May it please the Court. My name is Brandon Harper, and I'm an assistant United States attorney for the Southern District of New York. I represent the government on this appeal, as I did below. The judgment of the district court should be affirmed for three reasons. First, the district court did not abuse its discretion in finding that Beretta was competent to plead guilty to child enticement and child pornography offenses without sua sponte ordering a hearing. Why don't you turn to sentencing? Because sentencing is a weaker case for you. I mean, at sentencing, I mean, you have somebody whose two prosecutions in state court have been thrown out because he was incompetent, so that everyone should be aware of that possibility. And then the Paradiso report says that he's not currently incompetent, which doesn't really say anything much about the future. And then two years later, he's being sentenced, and there's a letter saying that his mind wanders and he laughs inappropriately. I don't – you're taking the easiest position for yourself. Why don't you address yourself to the sentencing? Certainly, Your Honor. At sentencing, what Judge Falo was confronted with was absolutely the Mercer mitigation report, which talked about the interview with Beretta. But she also had – Five interviews. That's correct. The interviews that were done with Beretta in advance of sentencing. She also had the report that she had commissioned of the expert that both parties agreed, Dr. Paradis, from admittedly a year and a half prior. A year and a half, which yielded a result that spoke of his current condition. And we know it's variable, don't we? I mean, the judge would know it's variable because the judge knew that the state prosecutions had been thrown out because he was mentally incompetent. So at least the judge knew he was mentally incompetent at one point, and now currently not incompetent with some accommodations. I don't know what they are. Right. She had all of that information before her, but I think what was also – And then the question is, is that enough to reasonably require a sua sponte decision to have a hearing? No, Your Honor. And certainly it's not an abusive discretion for her not to have sua sponte ordered a hearing based on what she read in advance of sentencing. And that's in part because of her own – I did not actually know that he was incompetent at one time, right? Because the Paradis report looks at the early reports and says that these reports are limited in their evaluation because they didn't do a full IQ test and they didn't do – or the one of them didn't do a full IQ test and none of them did adaptive functioning tests that she had done, right? That's correct. So if you relied on the Paradis report, you would have thought that it was more credible than the early reports, right? That's correct. And nobody said to this report, we think that the early reports are more credible than the Paradis report, right? That's true. In fact, defense counsel requested the Paradis report. That's right. And so the Paradis report does say that he has limited intellectual capacities, right? It does. But he understands the nature of the proceeding against him. It's at a simplistic level. It's like I know the defense lawyers are on my side. The prosecutors are trying to put me in jail and the judge is like God and makes the decisions, right? He systems that effect, right? Yes. He said all of that. So he understands how the proceedings work. It's limited intellectual capacity but understands the nature of the proceedings. Correct, Your Honor. That's consistent with him laughing inappropriately and not being a full participant in all of the deliberations, right? It is. And no one is arguing that he didn't suffer from mental challenges. All of the parties agreed. The government did not argue at sentencing that there wasn't any argument for mitigation. But I think it's important to note is that at sentencing, Beretto addressed the court. Judge Fela had an interaction with him during the sentencing proceeding where he spoke about his remorse and the fact that he was hoping that she would sentence him to something less than what the government was asking for. She was able to observe his demeanor and his interactions with her. She did provide the accommodations that Dr. Paradis talked about. There are multiple points. Well, I mean, I think you'd have to agree that an experienced trial judge has a lot of psychological insight. Absolutely. And yet is not a psychologist. That's certainly true. And therefore, if the judge, if the trial judge with her experience and is extensive could make this determination, I don't know why anybody is listening to appointing psychologists. Well, I think we're listening to Dr. Paradis because Judge Fela said I need Dr. Paradis to. But Dr. Paradis made a current, said he is not currently incapacitated and said he may need accommodations. I don't know what they are. I don't think the doctors spelled out what they are or were any considered. Your Honor, I think one of the accommodations that Dr. Paradis suggested was that Beretto might need additional time to consult with his lawyers so that he understands the proceedings. And in both the plea proceeding and the sentencing proceeding, Judge Fela at numerous points paused so that Mr. Beretto could speak at length with his lawyers. And so she did provide those accommodations. But Your Honor is exactly right. Judge Fela is an experienced trial judge who was the judge for the pendency of this proceeding. She had the opportunity to observe Beretto at the plea proceeding, at the sentencing proceeding. But the observance of him is not to say that she's a psychologist and understands his competence because she has a report of a psychologist that both parties agreed to, right? That's right. And the observations are just whether she observed something that would lead her to believe that there was a reason to question the expert report of the psychologist. That's exactly right. So it's the position of the defendants that she should have acted like a psychologist and disagreed with Dr. Paradis who had done the evaluation, right? That's true. And there are many cases, the Ehrenberg case that Judge Chin cited, Silverstein, Massad, cases where the district judge is confronted with evidence before their own eyes, as you said, Judge Menasche, you were asking her to believe her own eyes, where defendants are throwing themselves on the ground or making wild proclamations in front of the judge, acting in a way that is unusual. None of that was present here. What about this question that he's currently competent? Does that mean that the district court was not allowed to rely on that report five minutes later? The district judge can rely on whatever is in front of the district judge. The district judge commissioned that report, and she's permitted to continue to rely on that report. Right, so the report says he's currently competent based on these observations, and unless something comes before the district court that says that those observations no longer obtain, it's reasonable for the district court to rely on it, right? It absolutely is. At least it's not an abuse of discretion. That's correct. It's not an abuse of discretion for the judge to rely – Unless the sentencing memorandum from the defense offers reason to doubt it or to suggest that circumstances may have changed. Your Honor, I think if it had been – It's two years, you know. I mean, mental conditions are very variable, and at sentencing the critical thing is, is he all there at sentencing, and I'm just not convinced yet. I agree, Your Honor. It's important for the trial judge at every stage of the proceeding to ensure that the defendant is competent and understands the proceedings and the charges that he's facing. And Judge Falo was entitled to rely on all of the facts, including the Mercer evaluation, the Paradis report, her observations of the defendant. To be clear, no one at sentencing suggested that he wasn't competent and that the judge should conduct a fact-finding to determine whether he was competent. Under Arenberg, that wouldn't seem to matter because the judge is supposed to act on its own. I grant the facts of Arenberg are different, and if somebody is wearing funny hats and singing in the court, then maybe, you know, the judge should act sui sponte. But here the judge did have a report saying that, you know, from two years earlier saying he was not currently incompetent and a much more recent report saying that he laughs inappropriately and he's otherwise incompetent. He can't follow. He can't answer a question without it being repeated over and over again. Well, Your Honor, I agree with the factual recitation. I don't concede that the report deemed him necessarily incompetent. But Judge Falo was entitled to rely on the entire record, including representations of counsel at sentencing, about whether there was any reason that sentence should not be imposed. His counsel did not say, do not impose sentence, I believe he's incompetent. And Judge Falo made clear that she considered all of the submissions, including the mitigation report, which talked about his laughing inappropriately and acting childlike at times. If this was a case where the record was that she hadn't considered that, that would be concerning. But Judge Falo made very clear she considered all of the reports, all of the statements of the lawyers who were arguing in the case, and it wasn't an abuse of discretion for her not to sui sponte When no one asked for it, order a competency evaluation hearing. Your Honor, I see that my time is up. So first of all, I guess there was some suggestion of Mr. Rabate that the district court never made a finding of competency. But that's not right, right? The district court said, based on our discussions this morning, yours and mine, and that includes both your answers to my questions and my observations of your demeanor here in court are based as well as such that I've just had with your attorney, the attorney for the government, I find that you are competent to proceed to waive indictment if you wish to do so and interpret the inbuilt if you wish to do so, right? Correct. Okay. Can I ask about the restitution order? Yes. So you mentioned that you were there in the trial proceedings. So did you misunderstand the nature of the statute that there needed to be a finding of losses? Your Honor, I don't want to step away from the government's mistake here. I was not physically present for the sentencing. But the government's view at the time was that the statute required it. Oh, I see. You're not the one in the transcript at the sentencing. I get it. That's correct. So did the government misunderstand the requirements of the statute? Yes, Your Honor. The government understood that the statute required that at least $3,000 was required to be imposed as restitution for each of the victims. So if there was a misunderstanding of the way the statute worked, why shouldn't we say that, you know, that's a reason to vacate the restitution order? Because here the defendant agreed. With that, $9,000 was required. But if the defendant had the same misunderstanding, then why would that fix the problem? Because the defendant said that the defendant's lawyer said that $9,000 was sufficient. Not just that the $9,000 was required by the statute, but that it was appropriate and sufficient. Well, the defense counsel says we agree with the government. You should just go with the mandatory minimum of $9,000. And given that you're awarding that, we think that that's sufficient and you shouldn't award any more monetary penalties under the other statute, right? Correct. But, like, that is not inconsistent with a misunderstanding that the $9,000 was required. It's not inconsistent with a misunderstanding, but it also— Wouldn't the more prudent thing be for us to remand the issue of restitution for the district court to decide based on a correct understanding of the law? Certainly, Your Honor, that is an option that this court can take. Obviously, our first argument is that this issue has been waived because Beretto urged the district court to do exactly what it did. To the extent it was waived, it was waived because of the government's error in the first place, right? It was waived because of a mutual misunderstanding of the statute. It was the government's error in the first place. That's correct. Right? Well, I mean, so you're saying that it's an error. I mean, I suppose you could have said, is there any reason for thinking this, that actually it was strategic because the defense counsel would have thought that if you did an evaluation, you would have reached a figure above $3,000. And so they jumped on the idea that the government was suggesting only the minimum. And so maybe they got a benefit from that. Well, that's precisely what we said in our brief, that this was—whether the government misunderstood the statute, this was a tactical decision to agree with the government so as not to expose himself to an even higher amount of restitution for these victims. Now, would he have been exposed to a higher amount? I mean, do we have any idea about the losses that were suffered by the victims here? There's nothing in the record about the financial losses or other losses suffered by the victims. But what I can say is that based on your— I mean, you know, the paradigmatic case to which the statute applied would be a victim of child pornography where, you know, they're victimized in the production of child pornography and the content is distributed through lots of networks. And then, you know, there's going to be a lot of counseling of the victim and there's going to be efforts to try to get the content taken down and so on. This is a case where, you know, there's private transmission that's, you know, based on a deception but is voluntary based on the deception. And so I'm not—it's not to say there might not be a lot of counseling because, you know, a victim might be very alarmed that they shared that kind of material with somebody who turned out to be an adult. But you're saying we don't know. It's certainly not— So the number might be less than $3,000? Or do you think it's safe to assume that it's at least $3,000? Do you have a position on that question? Your Honor, here's what I think it's safe to assume, and this is based on the colloquy that you had with my friend briefly earlier, is that it's at least $5. There is some harm. I think it's a reasonable inference that for the victim of— But it has to be specific kinds of losses, right? So, I mean, I suppose if the victim's got any kind of counseling, then there'd be some losses that qualified.  Maybe that's safe to assume, but maybe—I don't know. Is that safe to assume? I don't want to speak out of turn because there's nothing in the record about this, but I do think that it's safe to assume. I think the $9,000 probably is reasonable, although it may be the very least what we're talking about today. But it's at least remarkable that the government is defending an award that it knows it did not prove. That's correct, Your Honor. It's a fact. That is a fact, and— But your position is it was stipulated to. It was stipulated to, but even if— It was stipulated, but you are defending an award that you know you did not prove. We are defending an award that we did not put any evidence in the record about. Yes, that's correct, Your Honor. That's usually how you prove things. Do you have a position on how the termination provision would work? So, like I said, it says, a victim's total aggregate recovery pursuant to this section should not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution, the full amount of the victim's losses, as measured by the greatest amount of such losses found in any case involving that victim, that has resulted in a final restitution order under this section. The liability of the defendant terminates, right? So is the way we should understand this if, let's say, Mr. Beretto filed a motion to terminate the restitution order now? Would the conclusion be, well, there were no demonstrated losses, so the amount is zero, and therefore we can terminate the restitution order? Or would it be there was a stipulation that each victim suffered $3,000 worth of damages, and so therefore he's liable up to $3,000? Your Honor, I'm not sure. Like Beretto's counsel, we've not looked at this issue. What I will say is that to the extent that this Court disagrees with the government's position and believes that the restitution award should be vacated, then we would respectfully request that the government either be permitted an opportunity to put forward evidence of victim losses, or if we're precluded from doing that, allow Judge Fela to reconsider in toto the award for specific restitution and the AVAA. Why would you be precluded from doing that? Well, Beretto makes an argument based on an unpublished case out of the Third Circuit and another summary order in this circuit that where the government had the burden of putting forward evidence of restitution, it didn't do so. Yeah, but it would have been obvious to the government that, you know, you couldn't rely on a stipulation, right? Correct. That would be your position. That would be our position before Judge Fela. That's correct. And it's clear the district court did think about the amount of restitution it was awarding and not awarding a larger amount on the AVAA fund, right? That's right. It's clear that— So normally when we think that the components of a sentence are interrelated, if we're going to vacate one, we also do the other to allow the district court to come up with a complete sentence. Yes, Your Honor. And that would be our request if this court does vacate the restitution award. Thank you. Okay. Thank you very much. Mr. Harper, we'll turn back to Mr. Labate on rebuttal. So— You know, on the restitution issue, not to belabor it, but if it were remanded, if the issue were remanded, the government might very well ask for more than $3,000. And it sounds like if it could prove any harm, $5 of harm, then it's going to get at least $3,000. I mean, is this a point your client really wants to press? Well, I'd direct this court to the Brown decision in 2018. Is this a point that your client really wants to press, knowing that there's a risk it could be more than $3,000? Well, there's precedent from this court that says that the government should not get a second opportunity to meet its burden. You talk about that, but just assuming the premise of Judge Shin's question, that the government would have that opportunity, would you still want the remand? It's hard for me to answer that question in the abstract because I have no idea what the victim's losses are. They could very well be much less than that or nothing, right? These are 14, 16, under 18 years old, and they were subjected to this. I mean, doesn't common sense tell you that there's likely some loss there? Perhaps, Your Honor, but the point here is there's nothing in the record for me to base that determination on. No, I understand that. I understand that. And you're probably right, and I think my vote would be to vacate and remand. And all I'm asking is if it's vacated and remanded, there is a risk, I think a very realistic risk, that the amount is going to be more than $3,000 per. And I'm just asking whether that's something you discuss with, well, I want to ask you what you discuss with your client. Does that make sense for you to subject him to that likely possibility? Well, what I can say, Your Honor, is that this $9,000 restitution award is a significant burden on my client who has very limited means. He feels very strongly that he wants to challenge this. I am not comfortable standing up here today. That's fine. Why don't you just move on then to whatever you were going to argue? So I'd like to just turn back to the competency issue for a moment. So I think there was a suggestion that, you know, we were saying that we disagreed with the Paradis report's findings, so therefore the court should have held a hearing. I don't think that's quite our position. Our position is that there were two earlier reports from 2017 that disagreed with it, which are not in the record, as well as additional information that was submitted in connection with sentencing. It's true I knew about the earlier reports, right, because that was the basis for ordering the evaluation by Paradis, right? The Paradis report, in fact, says I've reviewed the earlier reports and here's why I don't think they were reliable evaluations and here's why I did a more complete evaluation, right? But there is an obligation, clear in the case law, for the court to review the reports and take a look at them and consider their findings, and that did not happen here. Plus, I would urge this court to go back and look at what happened to Mr. — I mean, if he had treatment records over the course of 20 years, is the district court obligated to read all of those records? I mean, if it gets an evaluation from a specialist who says I've reviewed all the treatment records and here is my conclusion, you're saying the district court has to make an independent determination of whether that's an accurate characterization of all of the underlying records? The law requires, my understanding is, for the court to go back and look at all prior competency evaluations. That did not happen here. And subsequent to the Paradis report, Mr. Brito was at the MDC and the MCC for a period of years. So if you thought that the early reports were so important, why didn't you give them to the district court? The parties offered to give them to the district court in the April 2021 letter. Well, the parties say in the letter there are these early reports. We'll give them to you if you want them, but we think it's a basis for having the evaluation by Paradis, right? Right, and because — And then after you get the evaluation by Paradis, which says I've reviewed him, I've reviewed the early reports, here's my conclusion, and nobody is raising any further objection, why would the district court's sua sponte say, all right, I'm going to go back to the letter and that footnote and I'm going to request the early reports? It's the ultimate obligation of the district court to meet the burden to safeguard competency. So at the end of the day, it was the responsibility of the district court to ask for these evaluations and to review them. It did not do that here. And so — and I would urge this court to go back to page 17 and 18 of our briefs, as well as the underlying sentencing submission, that talk about what happened to Mr. Barreto at the MCC and the MDC, including after the Paradis report was prepared. He was placed in isolation up to, you know, 20 times on suicide watch. He was assaulted. He was robbed. For someone who is in his mental state, that has a significant impact on his competency, and that in itself should have given the court, you know, additional reasonable cause after the Paradis report to go back and assess whether or not a hearing was warranted here. One other point is that I think there was a suggestion that we had said that the district court never made a competency finding. That's not what I'm saying. I'm saying the district court never made a finding that the reasonable cause standard was not satisfied. That's different. It's different between making a competency finding that he's — that means that the reasonable cause standard is not satisfied because he's been determined to be competent. There's no reasonable cause for a competency hearing when the competency is not in question. But the question is, was there reasonable cause before the Paradis report was prepared? I mean, you're saying whether there was reasonable cause to have a hearing before there's been a finding of competency, and that's a weird question because you're saying after the finding of competency, there's reasonable cause. Like the finding of competency makes a difference as to whether there's reasonable cause to hold a hearing on competency, doesn't it? I'm saying that the reasonable cause standard, which is lower than the ultimate competency determination, once that is met, there is a statutory requirement to hold a hearing, regardless of whether or not the determination is later that the person is competent. So when the party submitted the letter saying we think you should have an evaluation by the specialist, the district court should have said, no, you're wrong. I need to have a hearing because that's required by the statute. There's no such thing as an evaluation. The district court sort of followed 4241B, which says prior to the date of the hearing, the district court can order an evaluation. So the statute contemplates that there will be an evaluation conducted prior to the date of the hearing, and that's what should have happened here. The court ordered the evaluation. But you're saying even if the evaluation comes back and says he's competent and both parties agree with it, the district court nevertheless has to proceed to the hearing. That's not what I'm saying. That's what Congress has said in the statute.  Thank you, Your Honor. Thank you very much, Mr. Rabbati. The case is submitted.